**J. P. (BUM) GIBBINS, Inc. v. RICHARDS.**
**No. 2912.**

Court of Civil Appeals of Texas. Eastland.

Dec. 14, 1951.

Rehearing Denied Jan. 18, 1952.

Marvin S. Sprain, McMahon Springer, Smart & Walter, Abilene, for appellant.

L. DeWitt Hale and Pichinson, Davis & Hale, all of Snyder, for appellee.

COLLINGS, Justice.

This appeal is from an order overruling a plea of privilege. Suit was brought in Scurry County, Texas, against J. P. (Bum) Gibbins, Inc., by Ralph J. Richards for himself and for the benefit of the Pacific Indemnity Company to the extent that it was subrogated to his alleged claim. Richards alleged that while he was working as an employee of Wilshire Drilling Company at a drilling rig in Scurry County, an explosion and fire occurred in which he sustained serious burns to various parts of his body and was greatly damaged thereby. Such damages were alleged to have been proximately caused by numerous acts of negligence on the part of employees of J. P. (Bum) Gibbins, Inc., a corporation engaged, among other activities, in servicing and swabbing oil wells. A plea of privilege was filed by J. P. (Bum) Gibbins, Inc., to be sued in Midland County, Texas, where it maintained its office and principal place of business. Upon a trial before the court without a jury, judgment was rendered overruling such plea and J. P. (Bum) Gibbins, Inc., has appealed.

It is contended by appellee Richards that venue is properly laid in Scurry County under Subdivision 9 of Article 1995, Vernon's Annotated Revised Civil Statutes of Texas because the evidence shows the commission of a trespass in that county and under Subdivision 23 of the statute because appellant is a private corporation against which a cause of action arose in Scurry County.

The two points presented by appellant on this appeal are that the court erred in overruling the plea of privilege because there was no evidence, or in any event, insufficient evidence, to show (1) that a crime or trespass was committed by defendant or its employees in Scurry County, or (2) that a cause of action against appellant arose in Scurry County.

Although appellee's petition alleged numerous acts of negligence on the part of employees of J. P. (Bum) Gibbins, Inc., the only action by such employees here urged by appellee to be negligence is the act of starting appellant Gibbins' pick-up near a recently completed oil well, which well was surrounded by a considerable amount of gas. The evidence shows that at the time of his injury appellee Richards was an employee of the Wilshire Drilling Company. For several days he had been working on the oil well in question, which was located in Scurry County about seven miles west of Snyder. He, together with another employee, came on the job at the 12 o'clock midnight shift on Saturday, May 20, 1950, and the injury complained of occurred about one and one-half hours later. When he reported for work a full crew of Wilshire Drilling Company employees were in charge of the well which had been "brought in" as an oil well and was at that time flowing oil. Two employees of J. P. (Bum) Gibbins, Inc., were also at the well. They were not working on the well but were standing nearby loading tools on a pick-up which had a J. P. (Bum) Gibbins, Inc., sign on the side. The equipment on the pick-up consisted of a swab unit but no swabbing operations took place after Richards came on the job nor does the evidence indicate when the swabbing was finished or how it was conducted. The only witness to testify concerning the accident and surrounding circumstances was Billy Mack White, the employee who came on the job with appellee. White testified

that when he and Richards came on the job at midnight he noticed and smelled gas around the rig; that the well was flowing oil into the slush pit and the gas continued to increase in density for approximately one and one-half hours during the time they worked before the explosion and fire; that the gas was plainly visible and looked "sort of like smoke." White said that he was aware of the presence of gas and that no one had to tell him that the striking of a match would cause it to explode. No fire or light was burning in the pit around the rig. Concerning the facts and circumstances at and immediately prior to the explosion and resulting fire, White testified as follows:

"Q. Now, what were you doing at the time the fire started? A. I was in the cellar, closing the valve that goes from the pit. I had already opened the one that goes to the tank.

"Q. What was Richards doing at that time, if you know? A. I don't remember exactly. He was at the back—in the back doing something.

"Q. Where were those two men of Bum Gibbins at the time the fire started? A. Out by the pick-up.

"Q. Where was the pick-up with respect to the rig? A. I imagine 20 feet, somewhere around it, to the southeast of the corner.

"Q. Was there anyone else near the pick-up besides these two employees? A. No.

"Q. Were you nearest to the pick-up other than those employees of Bum Gibbins? A. Yes.

"Q. How do you know there was a fire—what first called your attention to it? A. Just a blast—an explosion, just about the time I looked up. It was coming toward me, so I ran.

* * * * * *

"Q. What did the pick-up do at that time? A. Those guys drove off in it about 150 yards to the far side of the fire.

"Q. At the time you went to work, was the motor of the pick-up idling or running? A. It wasn't running.

"Q. At the time of the fire, state whether or not they started the pick-up? A. That is right.

"Mr. Sprain: Your Honor, I think that is a leading question. I don't know whether he knows whether somebody started the pick-up before it started—I believe it is a leading question.

"Mr. Hale: That is right, Your Honor, I think it goes to the weight, if the motor wasn't running prior to the time it was running immediately after the fire, I think it calls for a conclusion that somebody started the pick-up. It wouldn't start on its own accord.

* * * * * *

"Q. Where did the fire start? A. Right over pretty close to the pick-up, right over on the south east corner. That is where the explosion occurred. I was closing the valve, and I just looked and the fire was coming toward us; and, I turned and run.

"Q. This may be repetition—I think it is, but it is all right. The only two people near the pick-up at the time were the two employees of Bum Gibbins? A. That is right, they were next to it. I was the next to it, and the tool pusher was right behind me.

* * * * * *

"Q. Did you state on direct examination that these two boys were stacking their tools on the pick-up? A. Yes.

"Q. And, the well was flowing? A. Yes, it was flowing.

"Q. And, how long had you been working out there in that condition? A. About an hour, or an hour and a half.

"Q. You had been working out there about an hour, is that right, and, I believe you stated the gas was getting worse as you continued to work that hour, is that right, and, while that was going on these boys continued to stack their equipment on that truck, is that right? A. Yes, sir.

"Q. And, after you worked about an hour, you say about the time they were driving off in the truck, this thing occurred, is that right? A. That is right."

In our opinion, the evidence is not sufficient to show that appellant Gibbins, his

agents or employees, committed a trespass in Scurry County which was the proximate cause of appellee's injuries, nor is it sufficient to show that a cause of action arose against appellant. It is contended by appellee that Gibbins' employees started the motor of the pick-up at a distance of only about twenty feet from the oil well which was shown to be surrounded by a large amount of gas; that the act of so starting the motor to the pick-up was negligence under the circumstances and caused the gas to ignite and explode, and to burn and injure appellee as alleged and complained of.

No witness testified that the starting of a motor vehicle where gas has accumulated in the amount and manner shown by the evidence in this case could or would probably cause the gas to ignite. If, as urged by appellee, the likelihood of igniting the amount of gas shown by the evidence by starting a motor is of such general knowledge that courts take judicial notice thereof, the evidence is still insufficient to show that appellant's employees were guilty of starting the motor at or prior to the time of the explosion. It is needless to say that the starting of the motor after the explosion could not have caused it. White testified that after the explosion, appellant's employees drove off in the pick-up about 150 yards to the far side of the fire. It is just as reasonable to infer from this testimony that the motor was started after the explosion as it is to say that it was started at the time of or prior thereto. No witness saw appellant's employees start the motor or attempted to say the exact time it was started with reference to the time of the explosion. White testified that at the time the fire started such employees were "out by the pick-up," that "they were next to it." This evidence is not consistent with a finding that one of these employees started the motor of the pick-up at or prior to the time of the explosion, and thereby caused the gas to ignite. It is more consistent with the idea that the motor was started after the fire. If the evidence as a whole can be considered as having any probative force that Gibbins' employees did start the motor at or prior to the time of

the explosion and thereby caused same, it is, in our opinion, not sufficient to sustain an affirmative finding of such fact issues.

The judgment of the trial court is reversed and the cause remanded.